THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
ELIFAZ ESCOBAR, Defendant and Appellant.

No. 7501. Argued May 11, 1939.—Decided July 29, 1939.

*Miguel Bahamonde, E. Huertas Zayas, Frank Torres, Luis Noriega* and *Agustín E. Font,* for appellant. *R. A. Gómez, Prosecuting Attorney,* for The People, appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Nine defendants accused of murder in the first degree appeared by their attorneys, and moved for a bill of particulars specifying the participation of each defendant in the offense. The overruling of this motion is assigned as error.

The information charged that:

"On the occasion when a parade was in progress in celebration of the fortieth anniversary of the entrance of the Army of the U.S.A. into the island of Puerto Rico under the command of General Nelson A. Miles, and while the Hon. Blanton Winship, Governor of Puerto Rico, was standing on a platform in front of the Ponce City Hall, in the company of Mr. Enrique de Orbeta, Colonel of the Insular Police of Puerto Rico, of Mr. Luis A. Irizarry, Colonel of the National Guard of Puerto Rico, . . . who, together with Hon. Blanton Winship, Governor of Puerto Rico, were watching the parade," defendants, naming them, "then and there, voluntarily and criminally, with malice, premeditation, deliberation and with the firm and professed intention of illegally killing the human being, Hon. Blanton Winship, Governor of Puerto Rico, and by lying in wait, hiding behing the public who, at a short distance in front of the said platform were likewise watching the parade, and making use of revolvers, deadly weapons, attacked the Hon. Blanton Winship, firing several shots at him, wounding in the chest with one of them, the human being Luis A. Irizarry, Colonel of the National Guard of Puerto Rico, the bullet having gone through the pulmonary vein and artery, as a consequence of which the said Luis A. Irizarry died hours later."

The motion was properly overruled.

The second assignment is that the district court erred in overruling Escobar's motion for a postponement to enable

his counsel to prepare for trial. It was not his first request for a postponement. All of the defendants had appeared August 4, 1938 by their attorney, Miguel Bahamonde, who stated that he represented the defendants only for the purpose of arraignment but assured the court that defendants would be represented by counsel, and asked for time within which to plead to the information. The court gave defendants until August 9 within which to plead, and fixed the same day for a hearing of any legal question that might be raised. The district judge in disposing of the second motion for postponement, dated August 23, stated that:

On August 9 one of the defendants had appeared by his attorney, Nelson Colberg, and the other eight by their attorney, Bahamonde. All had pleaded not guilty and had asked for a jury trial, reserving the right to request separate trials. The court being informed that defendants had not found attorneys to represent them, appointed attorneys Miguel Bahamonde, Felipe Colón, and E. Huertas Zayas as counsel for defendants without prejudice to the employment of other counsel, and fixed August 22 as the day for the trial. Colón and Huertas Zayas resigned. The court accepted the excuse of Colón who was ill August 10, but rejected that of Huertas Zayas, and added the names of Agustín E. Font, Frank Torres, Luciano Colón, Luis A. Noriega, and Ramón Goyco, without prejudice to the rights of defendants to select their own attorneys. The attorneys so designated, with the exception of Font, were present and the court ordered that Font be notified of his appointment. The following day, August 11, Goyco resigned, and August 12, Luciano Colón and Luis A. Noriega also resigned. At the same time Font presented a motion in which he set forth certain matters with reference to professional ethics, his duties as an attorney, and the law, and requested that defendants be consulted as to whether they would accept his appointment and stated that, in any event, he would fulfill the obligation imposed upon him by the oath which he had taken

at the time of his admission to the bar. At a hearing on August 15, the judge, who had accepted the resignation of Goyco, also accepted that of Luciano Colón, but declined to accept that of Noriega. On that occasion, attorney Baigés Gómez appeared on behalf of the defendant, Vicente Morcigglio Figueroa, ratified his plea of not guilty and requested a separate jury trial. On that day, August 15, Font moved for a postponement to which the district attorney agreed, and the case which had been set for August 22, was re-set for August 29. None of the attorneys present objected to the fixing of August 29 as the date of the trial and on the following day, August 16, all of the attorneys named by the court accepted their appointments, and each defendant requested a separate jury trial. On August 17, the district attorney requested that August 29 should stand as the day fixed for the trial of Elifaz Escobar. A habeas corpus which had been presented was a very simple matter involving only the question of excessive bail and Escobar, who was to be tried separately on August 29, was represented by the five attorneys originally appointed to represent seven of the defendants. One of Escobar's attorneys had been assigned to the study of the legal question in a proposed motion for a change of venue, but the motion had not been presented, notwithstanding a full discussion of the matter in three cases already decided by the Supreme Court. *People* v. *Mateo Fajardo, People* v. *Collazo,* and *People* v. *Baerga.* The facts in the only case cited by counsel for defendant in support of their motion for a continuance, *People* v. *Arocho* y *Clemente,* were quite different from the facts in the instant case. The case had been set for trial since August 9. This was the second motion for a continuance. Defendant was represented by five attorneys and, all things considered, the extension of time already granted including the five days which remained before the date of the trial, was a reasonable time in which to prepare for trial.

The motion for a continuance, like the motion for a bill of particulars, was addressed to the sound discretion of the court and we find no abuse of that discretion.

■ The third assignment is that the district court erred in overruling a motion for a change of venue presented August 27. The motion was based on the following grounds:

(*a*) That a fair and impartial trial could not be obtained in the Ponce District.

(*b*) That the life of a witness would be endangered if the case were tried in that district.

(*c*) That it would be impossible to obtain an impartial and unprejudiced jury.

The motion for a change of venue, like the motion for a bill of particulars and the motion for a continuance, was addressed to the sound discretion of the court. We have examined the motion and the affidavits in support thereof, as well as the grounds on which the district attorneys opposed the motion and the counter-affidavits in support of such opposition. The witness whose life was said to be in danger was a government witness. At the hearing of the motion, it transpired that the person who had threatened the life of this witness was in jail and that any danger to which the witness might be exposed by testifying at the trial would be the same whatever the district in which that testimony might be given. No great difficulty was experienced in obtaining an impartial and unprejudiced jury and defendant, we think, had a fair and impartial trial. We find no abuse of discretion in the overruling of the motion.

■ The fourth assignment challenges the drawing of the jurors who were to form the panel "behind defendant's back, in defendant's absence and without having notified defendant of such drawing".

When the parties were asked if they were ready for trial, counsel for defendant announced their intention to challenge the panel on the grounds indicated in the assignment. Asked by the court to specify the section which required the presence

of the defendant, counsel said: "We believe it is a part of the trial, and the accused has a right to be present". The judge pointed out that Sections 199 *et seq.* of the Code of Criminal Procedure had been followed and that those Sections did not require the presence of the district attorney or of defense attorneys. The objection was overruled and defendant excepted.

By the terms of Section 212 of the Code of Criminal Procedure:

"A challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury or on the intentional omission to summon one or more of the jurors drawn."

The argument in the brief for appellant adds little or nothing to the belief of counsel expressed at the time of the challenge in the district court. The only authorities cited are *People* v. *Vázquez,* 20 P.R.R. 338 and *People* v. *Ramos,* 36 P.R.R. 739. We find nothing in either of these cases to support appellant's contention. Our conclusion is that the contention is without merit.

■ The fifth and sixth assignments specify the denial of certain challenges for cause.

The examination of one of the jurors, Rangel, covers some eight typewritten pages of the record. In answer to a question by the defense, Rangel said that he had read something in the newspapers about the defendant, that he had heard some talk about him and had formed and opinion. In answer to questions by the district attorney, he stated that:

At the time of the shooting he was at the corner of Sol and Salud streets; he saw nothing and knew nothing of his own knowledge. What he knew about the case was what he had read in the newspaper; he had not talked with any of the witnesses for the prosecution; he did not know what their testimony would be; he had formed his opinion from what he read in the papers; if the evidence was contrary to

the opinion which he had formed, he would render his verdict according to the testimony of the witnesses.

In answer to further questions by the defense Rangel said:

That if the testimony coincided with the newspaper accounts, he had his opinion already formed; that he was in the parade.

Counsel for the defense renewed their challenge for cause on two grounds, because the juror had stated that he was in the parade and, because he had already formed an opinion. The district judge refused to accept the challenge because although Rangel was in the parade, he was at the corner of Sol and Salud streets some six block away from the scene of the crime, and because he had stated that he saw nothing and that he would change his opinion according to the evidence.

Perfecto Herrera was a merchant. Before being examined as to his qualifications, he had asked to be excused. In answer to questions by the defense, he stated that he was busy; that he gave constant attention to his business; that if the trial lasted three or four days he would be preoccupied; that the moment might arrive when he would think about his business; that this would prevent him from properly weighing the evidence; that he would have in mind his preoccupation.

Asked by the district attorney whether his preoccupation would prevent an impartial judgment as to the defendant's guilt or innocence, or as to whether in reaching a decision he would take into consideration his business, he answered that the two things had nothing to do with each other; that his decision would be based on the evidence.

We find no abuse of discretion in the court's refusal to accept the challenges for cause.

The seventh assignment is that the district court erred in permitting the district attorney to exercise his right

of peremptory challenge after he had failed to exercise that right at the proper time.

Appellant, in support of his contention, takes from different parts of the record and submits the following extracts:

"District Attorney: Nothing else. Peremptory none.

Defense: I would like to ask the Court what is the ruling.

Judge: The ruling is the same for all murder cases, and until the final oath is taken the parties may take their peremptory challenges.

Defense: None as yet.

Judge: Prosecution's peremptories.

District Attorney: None.

Judge: Defense's peremptories.

Defense: I wish to consult the prosecution. If the defense says it will not take any, that it will not take any peremptory challenges, perhaps if they are not taking any, the jury would be definitely drawn.

District Attorney: Your Honor, I must consult my brother attorney too, to see whether we are in a condition to accept the jury.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Judge: The district attorney:

District Attorney: Nothing.

Judge: Prosecution's peremptories.

District Attorney: None.

Defense: None as yet.

District Attorney: This situation can not persist. The defense con not continue saying 'none as yet,' when it is asked. We are challenging peremptorily this young man from Adjuntas. This gentleman.

Judge: You may leave. Let the jury be completed

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Judge: Prosecution's peremptory.

District Attorney: None as yet.

Defense: None as yet. We accept the jury.

Judge: Prosecution.

District Attorney: None as yet.

Judge: Do the parties accept the jury?

Defense: The District Attorney has the initiative.

Judge: Peremptory or do you accept the jury? To ask the defense the same question.

500

District Attorney: We challenge Mr. Domenech peremptorily.

\* \* \* \* \* \* \*

District Attorney: None for cause. We accept the jury.

Judge: The defense.

Defense: We do not accept the jury, to be consistent with various questions of law that we have submitted.''

It may or may not be that either the district attorney or counsel for defendant or both were seeking to obtain an undue advantage. If so, neither succeeded. The extent to which such tactics may be tolerated is a matter largely within the discretion of the trial judge. We find no abuse of that discretion, no prejudice to defendant in any substantial right, and no such irregularity of procedure as to require a reversal.

The eighth assignment is that the district court erred in permitting a witness, Julio M. Conesa, to testify concerning a wound which he had received, and to exhibit the wound to the jury. Conesa was on the reviewing stand at the time of the shooting. His testimony was in substance as follows:

Witness was near the center of the stand within three or four feet of the Governor. The platform was crowded—more than 150 people. The parade began to pass about seven minutes past eleven. As the flag and the soldiers of the 165th Regiment passed the reviewing stand, there were three or four shots followed immediately by a fusilade as of machine guns. The shots came from everywhere. Witness thought it was a general uprising. He never imagined there were only three or four persons. That was his impression at the moment. The first shot was to his right, almost from behind an electric light post, from his right, as witness faced the front. Then witness saw a flash and something like smoke from the other side. The first two shots, witness saw someone fire from the other side at a distance of about ten feet. Witness saw two flashes and at first thought they were taking photographs as he saw something like a flashlight, something as if many photographers were taking photographs. Then they opened fire from the center. Witness saw persons with revolvers

firing from the center. Witness saw at least six or seven persons firing. A second before, at the same moment, witness was able to identify one individual who was to his right, it was Elifaz Escobar. Witness was wounded in the neck.

When witness was asked if he could show the wound to the jury, counsel for the defense objected on the ground that defendant was not being tried for having wounded witness but for the death of a human being. The district attorney answered that it was a part of the *res gestae* and tended to clarify and explain the facts. The court overruled the objection, and defendant took an exception. The witness then exhibited the wound to the jury.

There was no objection to the testimony. Exhibition of the wound only tended to corroborate the statement already made by witness. A reading of the opinion in *People* v. *Rodríguez,* 33 P.R.R. 461, the only case cited by appellant, will suffice to distinguish that case. On the other hand, see *State* v. *Parr,* 246 S.W. 905, cited by the *Fiscal* of this Court, and *People* v. *Philip,* 34 P.R.R. 619. The error, if any, in permitting Conesa to exhibit his wound to the jury would not be a sufficient ground for reversal.

■■ The ninth and tenth assignments are that the court erred in refusing to require the production of a previous statement made by Conesa before the district attorney, the production of which was requested by the defense for the purpose of impeaching the witness; and in permitting the district attorney to inquire about facts connected with other offenses of which defendant had been accused.

In the course of an extended cross-examination Conesa had repeatedly stated that he had no recollection of having made any statement before the district attorney. Near the close of this cross-examination the following incident occurred:

"You say, however, that when you heard the shots you left the platform to save yourself?

"Yes, sir.

"You don't remember when you testified?

"I do not remember having testified. If I were to tell you I remember I would be lying.

"Did you tell any one that you saw this defendant?

"I did not speak to anyone.

"When did you say for the first time that you saw this defendant?

"Various times.

"District Attorney: When he said it the first time is immaterial. How is that important? If the defense has proof that he has made statements, let them present it, and after that foundation is laid, they may proceed to impeach the witness.

"Defense: Let the court decide whether the question may be put.

"Judge: The witness has already answered it.

"Defense: When was the first time . . .?

"Judge: The objection of the *fiscal* in regard to this new question is sustained. The witness has said various times he does not remember having testified before the District Attorney.

"Defense: We except, and we ask the Court to order the District Attorney to give the defense the statement this witness may have made on this subject as this is the only available way to secure this impeachment. During a trial nothing should be hidden and everything should be shown for the benefit of justice itself.

"District Attorney: That does not deserve argument. It is strange to hear Mr. Font, who was a district attorney, say that.

"Judge: Objection sustained.

"Defense: We take exception because the court's denial prevents the defense from laying the foundation.

"Judge: There is no evidence before the court to prove that witness had made such a statement."

The judge was quite right in his statement that there was nothing before the court to show that the witness had made any statement before the district attorney. If the witness had in fact made any previous statement before the district attorney, and if that statement had been reduced to writing, there was nothing to prevent counsel from establishing that fact by obvious means, other than cross-examination. Later in the same cross-examination, Conesa admitted that he had talked to the *Fiscal* but counsel did not ask whether his statement had been reduced to writing and did not renew the

request for the production of any sworn statement that might have been made. Cases may or may not arise in which the refusal of a district attorney to produce a sworn statement made before him, or the refusal of a district judge to compel such production, would be a sufficient ground for reversal. This is not such a case.

▮ Earlier in the cross-examination Conesa had testified that:

He saw several persons firing. Defendant was the only one he knew. He saw others but did not identify them. He could identify defendant because he was looking toward the spot where defendant stood. He had seen someone very like defendant, if it was not defendant, it was his double. After the colors had passed, witness saw defendant fire. Witness did not know defendant. He had seen him but did not know him.

At this point in his testimony, witness was asked where he had seen defendant and answered: "When the Nationalists were being prosecuted."

On redirect the district attorney asked Conesa whether he had been a witness for "this defendant" in the case of "the twenty-first of March." Counsel for defendant objected on the ground that Conesa was a witness for the prosecution and the district attorney had finished his direct examination and could not continue the same without leave of the court. Another objection was that the question was immaterial because it referred to another case. The district attorney said it was a proper question because the defense had sought to cast doubt upon Conesa's testimony and the purpose of the question was to show that the witness was not prejudiced but was simply stating what he knew about the case. The judge overruled the objection and defendant excepted. The district attorney then asked Conesa whether he had been a witness for "this defendant" in connection with what occurred in Ponce on March 21st, and witness answered in the affirmative. The defense moved to strike all the testimony concerning the other case because such testimony would tend to

prejudice the minds of the jury and was immaterial and unnecessary. The case of *People* v. *Rodríguez* was cited and discussed in support of this contention. The judge said that he thought the evidence was admissible because the same defendant was involved. Defendant took an exception. The judge said that the defendant had been acquitted. Counsel for the defense said that the district attorney should conduct his own case. The judge said that the court could ask explanatory questions and explained that since counsel had spoken of certain matters and had not made a certain matter clear—as said evidence (in the *Rodríguez* case) was introduced to show that the municipal assembly had removed a member of the assembly—the court wanted to explain the result in that case. Counsel replied that the ground of the objection was that in any event, even though defendant had been acquitted, irrelevant facts would be brought to the knowledge of the jury, since they would be told that the defendant had been prosecuted. The judge pointed out that the witness on cross-examination had stated that he knew the defendant because witness had testified in the Nationalist case, and on redirect the district attorney could inquire into the same matter. Counsel for the defense renewed the objection and said that the question on cross-examination had been limited to whether witness knew the defendant, and witness had replied that he had known him in a previous trial but witness had not said that he had known defendant as an accused. Witness might have seen defendant at any other place but witness should not be permitted to say, as the district attorney wished him to say, that he had been a witness for the defense. That would impress upon the minds of the jury that the defendant had been prosecuted in another case. The district attorney then asked witness if the defendant had been acquitted in the other case and witness answered in the affirmative. Counsel for defendant requested that the question and answer should be deemed to have been permitted over defendant's objection.

The district attorney should have known that he was on the verge of a danger zone when he asked Conesa whether he had been a witness for "this defendant" in connection with what occurred in Ponce on March 21. He might have avoided the possibility of a serious question on a motion for a new trial or on appeal, by resisting the temptation to put such a question or by not insisting upon it in the face of objection. The reasons assigned by the district attorney were not very persuasive and the result would have been more satisfactory if the judge had sustained the objection. The judge himself finally saved the situation, however, by pointing out that the witness in the course of cross-examination had mentioned the previous case. We need not speculate as to what the result might have been but for this aspect of the question. Counsel for defendant had brought out on cross-examination the fact that Conesa's ability to identify defendant dated from the time of the previous case. In so doing, they opened a door and the district attorney stepped in.

The trial judge has some discretion in determining the scope of redirect as well as of cross-examination. We are not prepared to say that he abused that discretion in permitting the district attorney on redirect to inquire whether Conesa had appeared as a witness for Escobar in the previous case already mentioned by Conesa in the course of his cross-examination. Here, as in the eigth assignment, a reading of the opinion in *People* v. *Rodríguez*, 33 P.R.R. 461, will suffice to distinguish that case.

The eleventh assignment is that the district court erred in refusing to permit a certain question on cross-examination of the witness, Luis Germán Toro. After a series of questions which had no connection with the subject matter of the direct examination, witness was asked for whom he had worked during the four years of his residence in Ponce and had answered that he had worked on his own account; that he had been engaged in some business transactions. When

asked "what business transactions" the district attorney objected on the ground that the matter had not been the subject of direct examination and the question was impertinent and immaterial. Counsel for the defense submitted the question to the court without explanation or argument and the judge inquired as to the purpose of the question. Counsel answered that his purpose was to show the partiality of the witness. The judge permitted counsel to continue. Counsel repeated a previous question as to how long witness had been in Ponce, and witness repeated his previous answer to the effect that he had lived in Ponce four years. Counsel again asked what witness had done in Ponce and he answered that at first he had worked in the Health Department; that later he had resigned and had been engaged in "the automobile business".

Counsel then asked whether witness had not worked in the past election campaign. The district attorney objected on the ground that the question was immaterial. The judge sustained the objection and counsel for the defense took an exception without stating the grounds of the exception.

Perhaps the better practice would have been to permit a few questions along this new line of inquiry. Up to this point, however, the cross-examination had been a waste of time as far as the avowed purpose of counsel was concerned and a line should be drawn somewhere. Here also we find no abuse of discretion.

The 12th and 13th assignments are that the district court erred: In refusing to permit cross-examination of the witness Modesti for the purpose of impeaching him; in permitting questions concerning a conspiracy not alleged in the information, and in permitting the witness Chardón to testify to statements made by another person who was not the accused.

The twelfth assignment, as submitted in the brief, does not demand serious consideration.

The pertinent portion of Chardón's testimony follows:

At 5 o'clock in the afternoon of the 24th, the day before the shooting, López de Victoria, one of the accused, talked with witness. Witness knew López de Victoria. He was a Nationalist. He was a captain of cadets. Acting on the suggestion of López de Victoria, witness went at 10 o'clock in the morning to the Plaza Delicias where he met a group of Nationalists in front of the Plaza Café. Among them were López de Victoria, Pietri, Elifaz Escobar and González. The subject of their conversation was that they knew the Governor was coming to the parade in a steel vest and that López de Victoria would station the accused at a certain place where they could shoot the Governor in the face. López de Victoria gave instructions to shoot at the Governor's face. He gave those instructions because he said the Governor was coming in a steel vest. He gave those instructions to Elifaz Escobar, Pietri, González and others from the Island whom witness would know if they were brought before him. At the moment when the parade was passing the reviewing stand, he took his position near some light globes and then retired toward the rear, toward the other light globe. Witness was three or four meters behind them. Then he gave orders that when the flag passed, as the Governor was standing, they should fire upon him. He gave that order to Elifaz Escobar, Pietri, González and others from the Island. He said they were to fire upon the Governor of Puerto Rico. The accused fired. Elifaz Escobar fired.

Most of this testimony was admitted over the objection of defendant's counsel, who took exception to the rulings of the court.

Appellant, in support of his contention under the thirteenth assignment, cites: *Ivans* v. *People,* 90 Ill. 384; *People* v. *Richards,* 67 Cal. 412; *People* v. *Rivera Esbrí,* 26 P.R.R. 505; *People* v. *Pérez,* 27 P.R.R. 688; *People* v. *Torruellas,*

10 P.R.R. 514. These cases speak for themselves. The gist of the argument follows:

By analogy a conspiracy can not be proved under an information which charges the specific crime of murder. The evidence of conspiracy had no weight as far as the criminal acts which constitute the crime of murder were concerned. This being so, it must be presumed that the purpose of the district attorney was to raise an influence (sic) or presumption. Viewed from any angle the evidence was impertinent and prejudicial to defendant's substantial rights, since independently of the rest of the evidence, it could create a prejudice or probability of guilt in the minds of the jury. Hence, the evidence should not have been offered by the district attorney and should not have been admitted by the court. *People* v. *Rodríguez*, 33 P.R.R. 461.

It is a general rule that every accused has the right to cross-examine the witnesses against him. The witness was permitted to testify to statements made by López de Victoria, who was not the defendant, and defendant could not cross-examine him. Defendant having been deprived of his right of cross-examination and of investigation was also deprived of his right to a fair and impartial trial.

A sufficient answer to the first part of this argument may be found in 2 Warren on Homicide 133, Section 182, cited by the *Fiscal* of this Court. There we find the following:

"Where an indictment charges a defendant and his codefendants jointly as having committed the crime of murder, this is sufficient to authorize the state to introduce any competent evidence upon the issue of conspiracy, as raised by it, although there is an entire absence of any express allegation or charge of a conspiracy upon the part of the defendant. Such an indictment, jointly charging several defendants with murder, implies a conspiracy."

With reference to the latter part it would suffice to say that López de Victoria was a co-defendant and co-conspirator and his statements were made in the presence of the accused. Besides, Chardón's testimony as to the statements made by López de Victoria was not offered for the purpose of establishing the truth of any statement made by López de Victoria; but rather for the purpose of establishing the fact that

he had made the statements, or that he had outlined the plan and given the instructions embodied in those statements and had explained his reasons for such instructions. Hence, the statements were not hearsay.

The fourteenth assignment is that the court erred in not permitting a question on cross-examination, thereby restricting the right of cross-examination to which every accused is entitled. This error is submitted by appellant on the basis of the reasons previously assigned in support of the eleventh and twelfth assignments. Hence, it need not be separately discussed.

▬ The fifteenth assignment is that the court erred in refusing to order a recess in order that the defense might examine certain documents before proceeding with the cross-examination of the witness, Francisco Rivera.

In support of this assignment appellant is content to quote from *People* v. *Arocho et al.*, 33 P.R.R. 627, 635, 636, as follows:

"Justice requires and it is the rule that a person charged with a crime should have a reasonable time to prepare his defense; for if the rule were otherwise, the defendant's right to a fair and impartial trial would often be nullified.

". . . . Great deliberation—an utter absence of precipitancy— should have characterized every movement of the court leading up to the conviction. 'The law travels with a leaden heel, but strikes with an iron hand.' . . ."

From the stenographic record we take the following extract:

"Judge: Cross-examination.

Defense: Before questioning the witness, we want to aks that the defense be given an Article by Edgar Hoover of the 'F.B.I.' on this subject. Do you not receive a magazine on this subject?

District Attorney: I object. The contents of that magazine were not mentioned in the direct examination. Besides, the attorney for the defense has accepted the expert's qualifications.

510

Defense: We put the question so that we may formally request that we be handed the magazine. It is the same that was previously brought to court.

District Attorney: We object.

Defense: Then, so that this proceeding be more fair, I shall formally request a recess in order to see that article to be able to cross-examine the expert; we have summoned the expert Monclova, who has not come yet. He has not come and has not been summoned by the marshal.

Judge: The court ordered the issuance of the summons and the defense said they would deliver the summons.

Defense: There is an error. I think there has been a mistake for which we are to blame.

Judge: The summons was issued and I have the impression that it was left in Mr. Bahamonde's hands.

Defense: We have made a mistake. The court is justified in what it says. We all thought in good faith that it was true. That is our situation, and naturally as it involves this matter, we shall ask for a recess to examine certain documents so as to enable us to cross-examine the witness.

District Attorney:—We understand that the defense knew we would use expert testimony. We had announced it. The defense should have been prepared with its papers; the People and the court are not the ones to furnish it with documents and proof the defense should need to cross-examine a witness. That is too late and is not proper.

Judge: Objection sustained.

Defense: We respectfully take an exception. . . ."

In the absence of a stronger showing as to why counsel were not prepared to cross-examine the witness, the court did not err in refusing a recess.

The sixteenth assignment is that the court erred in refusing to permit a question on cross-examination of the witness Francisco Rivera. The question is submitted by a bare reference to the argument in support of the eleventh and twelfth assignments. It need not be separately discussed.

The seventeenth assignment is that the court erred in overruling a motion for "nonsuit". The motion was for a directed verdict.

The theory of the motion as set forth in appellant's brief
was that—even though Escobar was present' and fired some
of the shots, and even though Irizarry's death ensued—there
was nothing to show that Irizarry's death was caused by
any of the shots fired by Escobar *or by the other defendants*
named in the information. The motion, as originally pres-
ented—if it did not ignore Escobar's responsibility for the
shots fired by his co-defendants—made no specific mention
of the want of evidence as to any causal connection between
the shots fired by the other defendants, and Irizarry's death.
The position that the evidence did not show that Irizarry's
death was the result of shots fired by any of the defendants
was taken in reply to argument by the district attorney in
opposition to the motion. Neither in the argument before
the district court, nor in the brief for appellant do we find
any suggestion as to what might have caused the death of
Irizarry, if it was not caused by any of the shots fired by
Escobar or by his co-defendants.

The evidence tended to show that Escobar and the other
defendants were firing from the street at the Governor, who
with Irizarry and others was on the reviewing stand. In the
absence of any thing to show that any shots were fired from
the street—except those fired by Escobar and his co-defend-
ants—the question of reasonable doubt as to whether Iriza-
rry's death resulted from shots fired by Escobar or by some
one of his co-defendants was a question for the jury. The
motion was properly overruled.

 The eighteenth assignment is that the court erred
in the instructions given the jury.

First appellant complains of the final clause in the fol-
lowing sentence:

"The first thing I should tell you is that it is your duty to
decide the guilt or innocense of this defendant, Elifaz Escobar, ac-
cording to the evidence presented during these days, but due to the
nature of the indictment, which include various persons, besides this
co-defendant, from the same evidence must have appeared the part

the co-defendants respectively may have taken, and although there may be evidence to show that one of those who took part had died, and I am referring specifically to Antongiorgi, the evidence also tends to show that the defendants participated in this affair.''

The argument is that the court invaded the province of the jury by telling them that the evidence tended to show that "the defendants participated in this affair". The contention does not demand serious consideration.

In another connection the judge said:

"Deliberation means a state of calmness and cold-bloodedness; it does not mean reckoning or thinking for a long while, but rather the intention to kill executed by defendant in a state of calmness, as a consequence of a deliberate intent to satisfy a passion or vengeance, or to execute any other illegal act. It is sufficient that the intent to kill existed when the mortal injury was inflicted. The deliberation and premeditation depend on the circumstances of the case, and the fact of pointing and firing a firearm at a person and killing him is sufficient for the existence of deliberation and premeditation regardless of the speed with which the act was done.''

Appellant complains of the statement that ''it is sufficient that the intent to kill existed when the mortal injury was inflicted''. The contention is that the instruction assumes that defendant or that someone of the others named in the information caused the wounds, when there was no evidence to establish that fact. The contention is equally without merit.

Another ground of complaint is that the judge, several times in the course of his instructions, said that ''the evidence also tends to show'' etc. The argument is that the use of such an expression invaded the province of the jury as to the weighing of the evidence. We cannot concur in this view.

The judge also instructed the jury as follows:

"When a defendant and others conspire to take the life of a person, and all of them shoot, defendant may be found guilty, even though the shot he fired missed the target and did not contribute to the victim's death.''

Here the objection is that the judge was charging as to a conspiracy, while the information did not charge conspiracy. This is the same question discussed and disposed of in connection with the thirteenth assignment.

Two paragraphs of the charge read as follows:

"It has been said, gentlemen of the jury, by counsel for the defense in his address, that Chardón's testimony should be considered as that of an accomplice, and that it needs corroboration. That is the law.

"If from the weighing of the evidence you conclude that Chardón was an associate of the other defendants, it is your duty to examine the evidence to see whether eliminating what Chardón has said in regard to the participation of this defendant, you reach the conclusion that the imputed deeds have been corroborated. That is the formula suggested. We must eliminate from the case the accomplice's evidence and examine the testimony of the other witness or witnesses to determine whether there is evidence of guilt tending to connect defendant with the crime. If such evidence exists, the accomplice's testimony has been corroborated and it should be given all the weight which it deserves. If there is no independent evidence of guilt, there is no corroboration even though the accomplice may be found guilty. If you find that eliminating Chardón's testimony there is in this case evidence tending to show that defendant committed this crime, then Chardón's testimony is corroborated and it is your duty to consider its full evidencial effect. Chardón's testimony by itself would not be sufficient to condemn defendant."

The objection is that the judge again invaded the province of the jury by saying to them "it is your duty to consider its full evidential effect". The sentence complained of is substantially a repetition of what the judge said, namely: (Italics ours) "If such evidence exists the accomplice's testimony has been corroborated *and it should be given all the weight it deserves*". We have no reason to assume that the jury was misled.

Two other paragraphs of the charge read as follows:

"As regards instruction No. 9, the court charges the gentlemen of the jury that the law is that defendant is not obliged to offer evidence to prove his innocence, and that it is duty of the prosecution

to prove the guilt of the accused beyond all reasonable doubt. Thus far the charges requested by the defense.

"It is a presumption of law, gentlemen of the jury, that when a party announces he will offer some evidence and later he does not do so, the presumption is that if he had offered it, it would have been adverse."

Appellant's objection goes to the second and ignores the first of these two paragraphs. The second should be construed in the light of the first. When defendant took and exception to the second of these two paragraphs, the district judge said: "I was not referring to the defendant but (was speaking) in general terms and I made it clear that the defendant was not obliged to offer evidence."

It is not probable that the jury would have construed the second of the two paragraphs in question as referring to the fact that the defense had introduced no evidence. In any event, the explanation offered by the judge in the presence of the jury was sufficient to dissipate any doubt that the jury might have entertained as to his meaning. Moreover, the judge further instructed the jury as follows:

"I also wish to make clear my previous instruction to the effect that when a party offers some evidence and later does not present it, there is a presumption that it would have been adverse. By request of the defense I wish to tell you that it is incumbent on the prosecution to prove its case against the defendant and that the latter does not have to present any evidence."

Another paragraph of the instructions reads as follows:

"In accordance with the evidence presented and within the powers conferred upon me by law to interpret the evidence in relation to the charge, and because the defense has likewise requested it, I should tell you that there are only two verdicts you can render in this case: either find the defendant guilty of murder in the first degree, or innocent. In other words, if you consider that the facts stated in the information have been established, it is your duty to find the defendant guilty of murder in the first degree, and if you consider that those facts were not duly established, or if you have a reasonable doubt, then it is your duty to find the defendant not guilty and acquit him. The gentlemen of the jury may find the

defendant Elifaz Escobar guilty of murder in the first degree, or not guilty if they consider that he did not participate in the facts as stated in the information and as stated by the witnesses, or if you have a reasonable doubt as to whether he participated in the facts it is your duty to acquit him."

It is not probable that the judge intended to say that the defense had requested the specific instruction given in the paragraph just quoted. Whatever the meaning of the phrase "and because the defense has likewise requested it" may be, the charge itself was correct and the error, if any, would not be a sufficient ground for reversal.

The charge as to suppression of evidence and the one as to conspiracy were the only ones to which the attention of the court was directed by specific exception.

 The judge refused to give two special instructions requested by defendant. They were as follows:

"Gentlemen of the jury, if from the weighing of the evidence it appears that it has not been proved that the defendant Elifaz Escobar—or any other of the defendants—has perpetrated the physical act (the fatal shot) at the Governor; or the physical act (the fatal shot) which brought about Col. Irizarry's death, it is your duty to acquit this defendant.

"Gentlemen of the jury, if after weighing all the evidence you have a reasonable doubt of whether the accused, Elifaz Escobar, or anyone of the other defendants, committed the physical act (the shot) at the governor; or the physical act (the shot) which caused Col. Irizarry's death, it is likewise the duty of the gentlemen of the jury to acquit him."

These instructions, as far as proper, were included, we think, in the general charge. If given in the form in which they were submitted to the court, they might have tended to confuse the minds of the jury. Certainly they would have added nothing to the clarity of the instructions already given. The judge did not err in refusing to transmit them to the jury.

 The judge also overruled a motion for a new trial. The motion was based on the following grounds:

"(a) Because the court erred in denying the motion for a bill of particulars.

"(b) Because the court did not postpone the case, as was requested in the motion filed in August, 1938, and likewise because it denied the postponement requested on the day of the trial.

"(c) Because the court erred in denying the motion requesting a transfer of the case to another district.

"(d) Because the court erred in allowing the prosecution to enter peremptory challenges after he had waived them, when there was no fundamental reason to justify such a rule of proceeding.

"(e) Because the jury was given erroneous instruction which affected fundamentally defendant's rights.

"(f) Because the court erroneously charged the jury after it was deliberating, when such instructions were requested neither by the jury nor by the parties.

"(g) Because the court allowed the accomplice (witness Chardón) to testify without corroboration, and above all, when such testimony set forth statements of another co-defendant, thereby infringing defendant's right to cross-examine the witnesses on the other side.

"(h) Because the court allowed the district attorney to introduce evidence of defendant's reputation when the defense had not put it in issue.

"(i) Because the verdict was contrary to the evidence and the law."

These questions have either been covered and disposed of by what we have said, or, as developed in the brief for appellant, do not demand further discussion.

Appellant's final contention is that the verdict was contrary to law. In support of this contention appellant is content to say that: "As it was not shown by the evidence that defendant or any of the other co-defendants actually fired the shot which caused the deceased's death, an essential element of the charge was missing, and naturally the verdict was contrary to the evidence."

This, of course, is the same question raised by the motion for a direct verdict and does not require further discussion.

The judgment appealed from must be affirmed.

Mr. Justice Travieso took no part in the decision of this case.